## SILVERTHORNE, TREASURER OF BELVIDERE, ETC., v. THE WARREN RAILROAD COMPANY.

1. The prosecutor of a *mandamus* may demur to the return made by the defendant.
2. Dubious and important legal questions ought not to be decided on a motion to quash a return.
3. A party making return to an alternative *mandamus*, must show that he has complied with the order of the writ to the extent of his ability.

This was a motion to quash a return to an alternative *mandamus*.

The statements contained in the writ were to the following effect, viz., that certain taxes were assessed, by the assessor of the town of Belvidere upon the defendants, to the amount of $22,622.17 ; that said company appealed from such assessment to the common council of Belvidere, sitting as commissioners of appeal in cases of taxation, and that said assessment being affirmed, a tax warrant issued, and that thereupon the company sued out a *certiorari* and *supersedeas*, and that one William A. Person, being the collector of taxes, duly returned said assessment into the Supreme Court; that the tax being sustained in the Supreme Court, the case was carried to the Court of Errors, with a similar result ; that after a *remittitur*, it being made to appear that the said tax was unpaid, and that said Person had ceased to be collector, and that said Silverthorne was the treasurer of Belvidere, the command of the writ was that the said com-

pany pay to said Silverthorne, as treasurer, &c., said tax, or show cause to the contrary, &c.

The return substantially stated the incorporation of defendants, and the building of their road; that in this work they expended a large sum of money, to wit, the sum of two millions of dollars, or thereabouts; that to raise that sum they sold stock to the amount of one million four hundred and ninety-eight thousand three hundred and fifty dollars, in shares of fifty dollars each; that to raise the balance of the sum necessary to complete their road they issued bonds, secured by a mortgage on their road, for six hundred thousand dollars, and which bonds are still unpaid; that by an act of the legislature of this state, approved 5th March, 1857, the Delaware and Lackawanna and Western Railroad Company were authorized to lease of the defendants their road upon such terms and conditions as said companies might mutually agree, and that accordingly, by virtue of an indenture, bearing date 1st October, 1857, between said companies, the said defendants leased to the said the Delaware and Lackawanna and Western Railroad Company, the road aforesaid, with all the lands belonging thereto, together with all the buildings and appurtenances connected with said road, and also all their rights, privileges and franchises, for and during the legal existence of said lessee; and that, in consideration thereof, said lessee did, thereby, covenant to pay to the persons thereto legally entitled, the interest semi-annually upon the mortgage bonds which had then been issued by the said defendants, amounting to the sum of six hundred thousand dollars, at the rate of seven per cent. per annum; that when the said bonds should become due, they would purchase and take an assignment of said bonds; that they would, during the continuance of said indenture, pay to the legal holders of the certificates of the capital stock which had been issued by the said defendants, and upon any further certificates that might thereafter be issued by the said defendants, under the direction of the said lessees for the purpose of completing the said defendants' road, interest

semi-annually, at the rate of five and a quarter, per cent. per annum; provided, that the rate of interest thereby agreed to be paid upon the stock should be increased from time to time, so that the holders of the capital stock aforesaid should receive as large a rate of interest, (not exceeding seven per centum per annum,) as might be paid by the said lessee to their stockholders upon their stock; that all the said payments should be made at the office of the treasurer of the said lessees; that said lessees went into possession, and still continue to hold said road by virtue of said indenture, and have complied with all the stipulations on their part; that said defendants have no property of any description wherewith to pay said tax, nor are they able to borrow money for that purpose; that they have requested said lessees to pay said tax, which request was not complied with; and lastly, the return avers that said Silverthorne was not, on the day when said *mandamus* issued and was tested, the treasurer of the said town of Belvidere.

The motion was argued before the CHIEF JUSTICE, and Justices DALRIMPLE and VREDENBURGH.

For the motion, *J. Vanatta.*

Contra, *J. G. Shipman* and *B. Williamson.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The substantial statement on which the legal sufficiency of the return to this *mandamus* must depend is, that the Warren Railroad Company, who are the defendants, have leased, under legislative authority, their road and its appurtenances, in connection with their franchises, to another railroad company, reserving the rent not to themselves, but to their debtors and stockholders as individuals. The endeavor thus is, to show the entire inability of the defendants to command means to pay the tax in question, and thus comply with the mandate of this writ.

Of course it is obvious that a return which shows a legal impossibility to do what the writ directs, must, in the nature of things, as a general rule, be good, and consequently a want of funds, and an inability to procure them, will, for the most part, be a legal answer to the precept of the court requiring cause shown why certain moneys should not be paid. But, nevertheless, it has been adjudged that the want of funds will not constitute a valid return in cases in which a payment of moneys is required where the party has voluntarily placed himself in a position requiring pecuniary means for the discharge of his obligations. Thus where the trustees of a turnpike road had formed a new road through private grounds, but had neglected to make proper fences, that being a statutory obligation, the want of necessary funds for that purpose was held to interpose no bar to a peremptory *mandamus.* "The law," said Lord Denman, in the case referred to, "orders these parties to perform the duty if they make the road; having made the road, they cannot excuse themselves from the duty." And Mr. Justice Patteson supplements this view, with the remark: "If they had not adequate funds they ought not to have made the road." *Regina* v. *Trustees of Luton Roads,* 1 *Q. B.* 860. A similar rule was enforced with considerable rigor in the case of *Regina* v. *Birmingham Railway,* 2 *Adolph & E. (N. S.)* 47. See also *Reg.* v. *Eastern Counties Railway,* 10 *A. & E.* 557.

Applying this doctrine to the present return, it is not to be denied that it may be argued, with some show of plausibility at least, that this defendant must be classed in this category of corporations which have assumed duties, and from the performance of which they have knowingly incapapacitated themselves—for the duty to pay taxes could scarcely have been overlooked, and yet the defendants admit they have put it out of their power to discharge it. Whether or not such an inability, arising from the defendants' own voluntary agreement, can be set up as a protection in proceedings of this nature, would seem to be a question of some im-

Silverthorne v. Warren Railroad Co.

portance, and one which ought not to be hastily decided. So, in like manner, the same caution would appear to be proper in the disposition of the point as to the legal effect of the agreement of · the defendants turning over to their own stockholders, as individuals, a part of the rental of their road and its appendages. The statute conferred the power on the corporation to lease its road and franchises, and the question therefore which arises is, can it authorize the payment of its entire revenue derived from such lease, not requisite to liquidate the interest on its debts, to be paid into the hands of its own corporators, and thus escape, under a kind of plea of insolvency, from its proper liability to bear its share of the burthen of taxation? Under the circumstance of the contract referred to, has not this company a right to intercept this fund before it goes into the hands of its own stockholders, in order to appropriate so much of it as may be necessary to the satisfaction of all legal demands held against it in its corporate capacity? I should have no doubt, if it have this right of interception or reclamation, that the present return is defective, because, possessing such a right, it must show to the court that it has taken the necessary steps to enforce it. Merely to return, that it has requested its lessee to pay the claim in controversy is not sufficient. The party must show that he has moved in the direction required to the extent of his ability. It was on this principle that a return was held sufficient which stated that the commissioners, to whom the writ was sent, had made a rate, which, when collected, would be sufficient and applicable to pay the prosecutor. *Tapping on Man.* 121. The question, therefore, whether the defendants in their present situation have a capacity in law to take the fund in question by a course of legal proceedings, appears to me to be one of vital importance in the consideration of this return— for if such capacity exist, as has been already intimated, the inception of such proceedings, or at least an intention to take such a step, is indispensable to the completeness of the defendants' position.

But enough has been said upon these topics to exhibit the importance of the questions involved, and the difficulties, it may be, in the way of their solution. The inquiry then is presented, ought matters of this character to be decided on a motion to quash? That the court has the abstract power to pursue this course, I have no doubt. The exercise of such a capacity, in some instances, would seem to be not only proper but indispensable in order to prevent indecorum or vexation, as in the case of a tricky or fraudulent return. But in the English practice this authority is not exercised, except in the class of cases just referred to, or where the returns are frivolous, or contemptuous or manifestly bad on their face. *R.* v. *Payn,* 6 *A. & E.* 392; *R.* v. *St. Saviour,* 7 *A. & E.* 925; *R.* v. *Kendall,* 1 *Q. B.* 374; *Reg.* v. *Payn,* 11 *Adol. & E.* 955. But when a return is not chargeable with any of these vices or defects, but, to the contrary, evidently contains solid matter inviting judicial consideration, the course is not to dispose of the subject in a summary way, but to put the prosecutor to his demurrer. That this is the preferable method is manifest from the consideration, that in this way only can the· decision rendered be formally placed in a position to become the subject of review by writ of error. The magnitude of the sum in controversy in the case now before us, as well as the novelty, and perhaps the intricacy of the questions in issue, render the adoption of this practice on this occasion peculiarly proper. I am aware that doubts have been expressed whether the statute of 9 *Anne, ch.* 20, § 2, of which our act in this respect is a transcript, contains an authority for a prosecutor to demur to a return. These doubts have since been removed by *Statute '6 and* 7 *Vict., ch.* 67, § 1. The language of the original English act, and of our own, is certainly somewhat ambiguous; the words are : " It shall and may be lawful to, and for the person or persons suing or prosecuting such writ of *mandamus,* to plead to or traverse all or any· the material facts contained within the said return ; to which the person or persons making such return, shall reply, take

State v. Clerk of Hudson County.

issue, or demur." The uncertainty arises from the presence of an express authority in the one party to use the demurrer, and the absence of an explicit permission to the same effect with regard to the other. Formerly the act of New York was subject to the same perplexity, being a copy of the same original, and yet in the case of *The People* v. *Champion,* 16 *Johns.* 64, Mr. Justice Spencer, in construing this act, held, that the authority which it confers on the prosecutor to plead to the return, involves the right to demur. This, I think, is the better view, for it seems to harmonize with the substantial purpose of the act, which was in this proceeding, to constitute a regular course of pleading, so that the contention between the parties should be formally stated, and more deliberately adjudged.

My result is, therefore, that the motion to quash should not prevail, but the prosecutor should be permitted to raise, by demurrer, the questions argued, if he may deem it advisable.

Justices VREDENBURGH and DALRIMPLE, concurred.

CITED *in State, Roll, pros.,* v. *Perrine,* 5 *Vr.* 258.